UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

HATTIE B. REED,

    Debtor.

_____/

Case No. 10-67727
Chapter 7
Hon. Walter Shapero

## OPINION DENYING MICHIGAN FIRST CREDIT UNION'S MOTION FOR RECONSIDERATION

### I. BACKGROUND

Creditor, Michigan First Credit Union ("MFCU"), has moved for Reconsideration of the Court's Order Denying Approval of three Reaffirmation Agreements, once covering a secured vehicle loan and the other two being other loans (Docket Nos. 22) ("Order"). The pertinent part of that Order provided "in relation to the secured debt covering the vehicle, that as long as Debtor is not in default under the terms and conditions of the agreement and continues to make the payments and otherwise perform Debtor's obligations thereunder, the Creditor shall not exercise its rights thereunder." MFCU argues that a provision of the Order was legally erroneous and in direct conflict with the applicable provisions of the Bankruptcy Code because it permits the Debtor to retain the vehicle without either having successfully reaffirmed the debt or redeemed the vehicle.

### II. DISCUSSION

MCFU initially argues that Debtor did not timely comply with certain provisions of 11 U.S.C. § 521 and this abandoned the vehicle by virtue of the terms of the original

loan, which are enforceable against the Debtor. It specifically cites: (1) 11 U.S.C. § 521(a)(2), which provides that for secured property of the estate, a debtor must state his intention to either surrender the property, redeem the property, or reaffirm the debt secured by the property, and must file stated intentions "within thirty days after the date of the filing of a petition under chapter 7 of this title", and (2) 11 U.S.C. § 521(a)(6), which states that a debtor shall not retain possession of any personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless, "not later than 45 days after the first meeting of creditors," the debtor enters into a reaffirmation agreement or redeems the property pursuant to 11 U.S.C. § 722.

While originally scheduled for October 7, 2010, the 341 Meeting of Creditors was not held and completed until November 4, 2010. The reaffirmation agreement was executed on October 22, 2010 and filed with the court on October 29, 2010, well within the required 45-day time period. No statement of intention was ever filed.

MCFU argues that Debtor's failure to file the Statement of Intention required by § 521(a)(2)(A) and referred to in 3§ 62(h)(1)(A), resulted in entitlement to possession of the vehicle pursuant to the terms of 11 U.S.C. § 521(d). That provision states:

> If the debtor fails timely to take the action specified in … paragraphs (1) and (2) of section 362(h), . . . nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.

This language suggests the possible existence of some sort of *ipso facto* or bankruptcy clause which may become operative if § 521(d) is contravened.

2

MCFU contends that the questioned language of the Order vitiates paragraph E of its Retail Installment Contract with Debtor (stating, MCFU says, that the bankruptcy filing is an event of default), thus entitling MCFU to possession of the vehicle. However, a close reading of the said paragraph E, relating to Remedies, only allows pursuit of a resulting deficiency balance and possession of the vehicle "if you are in default on this Contract." A separate section, labeled Default, details what constitutes a default, but such does **not** include language, otherwise known as *ipso facto* clause, saying that a bankruptcy filing is a default. MCFU acknowledges that to be the case and, thus, the bankruptcy filing is not *per se* a contract default.

MCFU cites *In re Bell*, 700 F.2d 1053 (6th Cir. 1983), a pre-BAPCPA case, to support its *ipso facto* clause default argument. Yet in that case, the default was precipitated by a specific *ipso facto* bankruptcy clause in the security agreement. Further, a constructive default arguably occurred when the discharge of the debtor's personal liability clashed with a paragraph that provided that "the buyer shall be liable for a deficiency." In the instant case, however, as noted, the contract language differs and is only operative **after a default on the security agreement has occurred.** Under that clause, in this case, filing for bankruptcy and the discharge of personal liability does not itself constitute a default without an *ipso facto* clause or some other relevant default provision in the security agreement – neither of which is present in this case.[1]

MCFU further contends that § 362(h) operates to terminate the automatic stay such that the property is no longer part of the estate, because, as noted, Debtor failed to

---

[1] In that regard and interestingly, while attorneys for MCFU state on page 2 of their Supplemental Brief that the contract does **not** contain an *ipso facto* clause, they state on page 3 that "accordingly, Creditor is entitled to possession of the vehicle pursuant to the terms of the Bankruptcy Code and **the operation of the ipso facto clause contained in the contract between Debtor and Creditor**" (emphasis added).

file a Statement of Intention. Section 362(h) terminates the automatic stay when the debtor fails to **both** "file timely any statement of intention required under section 521(a)(2)," and "to take timely the action specified in such statement." Under the statute, the Debtor was thus required to file a statement of intention expressly stating whether she would be surrendering or retaining such property by redemption or reaffirmation no later than thirty days from the date upon which she filed her petition, or by October 2, 2010. Then, pursuant to § 521(a)(2)(B), the Debtor was required to perform that previously filed statement of intention no later than thirty days after the first date scheduled for her meeting of creditors, or not later than November 7, 2010. Failing that, MCFU argues that the automatic stay terminated by operation of law with respect to the vehicle, which then ceases to be property of the estate.

In this case, the subject reaffirmation agreement was executed and filed with the court prior to its particular deadline, but after the statement of intention filing deadline had passed. Only one of the said two deadlines was contravened in this case, so technically the stay lift was not automatically triggered. Section 362(h) does not expressly state which of the two § 521(a)(2) deadlines applies; however, because subsections (A) and (B) of § 362(h)(1) are in the conjunctive, thus requiring that both subsections (A) and (B) of § 521(a)(2) be met prior to termination of the automatic stay, the Court finds the § 521(a)(2)(B) deadline to be determinative, since § 362(h)(1) cannot be triggered until the expiration of that particular deadline. As such, the filing of the reaffirmation agreement, signed by Debtor and Creditor, on October 29, 2010 precluded termination of the automatic stay on November 7, 2010. *See In re Norton*, 347 B.R. 291 (Bankr. E.D. Tenn. 2006) (stating, in a case where a statement of intention was actually

4

filed, that termination of the automatic stay requires contravention of both deadlines in § 521(a)(2) subsections (A) and (B)). A statement of intention is designed to give creditors and the court notice of what the debtor intends to do with the property. The mutually executed reaffirmation agreement in this case, signed on October 22, 2010, is both sufficient and sufficiently timely to satisfy both the requisite statement of intention under § 521(a)(2)(A) and the performance of that intention under § 521(a)(2)(B). The reaffirmation agreement filing before the performance deadline, in this Court's view thus both satisfies the statutory language and its purpose.

MCFU also comes somewhat late to its position. It assented to the reaffirmation agreement, and joined in submitting it to this Court for approval, thereby arguably waving or failing to timely assert the issue it now raises, i.e.: the Debtor failing to timely file a Statement of Intention.

MCFU also argues that "redemption and reaffirmation are the exclusive methods pursuant to which a debtor may retain possession of secured collateral," citing *In re Bell*, *supra*. In the *Bell* case, Debtors sought to redeem collateral, but asserted it could do so by way of installment payments. They sought court approval to avoid either having to enter into a reaffirmation agreement or redeem by paying the typical lump-sum. While that court indicated in its opinion that redemption and reaffirmation were the exclusive methods **which could be pursued by Debtors** to retain possession of the vehicle, it did so in the context of a case where the decisive issue was whether or not one could redeem by making installment payments instead of a lump-sum payment. Compliance with § 521 and § 362(h) requires that a debtor must merely opt for one of these exclusive options, either entering into a reaffirmation agreement, surrendering, or redeeming with a lump-

sum payment. In the instant case, the Debtor did in fact enter into the reaffirmation agreement (with the Creditor's approval) and in that sense complies with what the Court said in *In re Bell* (and what the statute talks about). *Bell* was silent on the issue at hand, which is continued possession following denial of a reaffirmation agreement because of undue hardship on the debtor. It is important to understand that it is not necessary for the Court to approve the reaffirmation agreement in order for the Debtor to comply with § 521 or § 362(h). The court's not approving the reaffirmation agreement does not in and of itself lift the automatic stay. Once a debtor has "entered into" a reaffirmation agreement, they have satisfied the literal conditions of the Bankruptcy Code, even if approval is later denied by the court. Denial of approval of a reaffirmation agreement is in essence outside the control of the debtor, based on an independent finding of undue hardship.

MCFU further argues that the 2005 BAPCPA modified the Code to further clarify that redemption and approved reaffirmation are the exclusive avenues for a debtor to maintain possession of personal property, attempting to distinguish the situation from previously allowed "backdoor" ride-through provisions by pointing out that in all of those cases the debtors had timely complied with § 521 by timely filing a Statement of Intention. This, they argue, supports the enforceability of an *ipso facto* clause in the Security Agreement. This would be a sound argument if the *ipso facto* clause actually existed, which it does not in this case. Prior to passage of BAPCPA, the Court of Appeals for the Fourth Circuit held in *Home Owners Funding Corp. v. Belanger*, 962 F.2d 345 (4th Cir. 1992) that a debtor who stays current on payments under a loan agreement may retain the property without reaffirming the underlying debt. In *In re Chim*, 391 B.R. at

6

10-67727-wsd    Doc 39    Filed 12/14/11    Entered 12/15/11 07:10:41    Page 6 of 10

199 the court extended the rationale of *Belanger* to post-BAPCPA cases where the Court denies the reaffirmation agreement. Thus, where a "debtor complies with the requirements of Section 521(a)(2), the debtor may retain possession of the collateral after the entry of the discharge and the closure of the case." *Id.* (citing *In re Hussain*, 364 B.R. 211 (Bankr. E.D. Va. 2007) ("Once the discharge is granted, the creditors may not repossess the vehicles without violating the discharge injunction unless there is a subsequent payment or insurance default.")). Post-BAPCPA, alongside *Chim* and *Hussain*, at least five other courts have allowed a ride-through following denial of a reaffirmation agreement. *See, e.g.*, *In re Bower*, No. 07-60126-fra7, 2007 WL 2163472 (Bankr. D. Or. July 26, 2007); *In re Moustafi*, 371 B.R. 434 (Bankr. D. Ariz. 2007) ("The Reaffirmation Agreement is not in the Debtor's best interest and, therefore, will not be approved…. [S]he may retain the Nissan as long as she is current on her payments and insurance obligations."); *In re Stevens*, 365 B.R. 610 (Bankr. E.D. Va. 2007); *In re Riggs*, No. 06-60346, 2006 WL 2990218 (Bankr. W.D. Mo. Oct. 12, 2006); *In re Quintero*, No. 06-40163 TK, 2006 WL 1351623 (Bankr. N.D. Cal. May 17, 2006). That said, at least one court has argued that the ride-through at hand goes against legislative intent. *See In re Donald*, 343 B.R. 524, 540 (Bankr. E.D.N.C. 2006). The court disagreed with the debtor's argument that § 362(h), § 521(a)(6), and § 521(d) are only operative upon the debtor's failure to enter into a reaffirmation agreement, and not when the court disapproves of that agreement. *Id.* The court stated that that interpretation "in this case would be tantamount to abrogating the requirements of 362(h) and 521(d)." *Id.* However, this denial of a ride-through was largely because the court saw no reason not to approve the reaffirmation agreement. That court went on to acknowledge that where the debtor
7

"intends to perform under the reaffirmation agreement and where disapproval by the court is beyond the debtor's control," a ride-through may be countenanced. *Id.*

Furthermore, modifications to the Code (and/or lack thereof in light of existing law) suggest the ride-through was contemplated and allowed to continue. Section 521(a)(2)(A) (formerly § 521(2)(A)) states:

> **(2)** if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--
> **(A)** within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and***, if applicable***, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

11 U.S.C. § 521(a)(2)(A) (emphasis added).

It has been interpreted by courts as a strong argument in favor of allowing the ride-through by indicating that the language "if applicable" suggests that surrender, redemption, and reaffirmation are not the sole dispositions of property under Chapter 7. Thus, in *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006), the court suggested the section was merely a "notice requirement to permit secured creditors to ascertain the debtor's intentions early in the case" and is not supposed to restrict substantive options available to a debtor.

Since Congress didn't remove "if applicable" with passage of BAPCPA even though this language was heavily relied upon by courts to justify ride-through provisions, such congressional inaction, while not dispositive, suggests a lack of intention to eliminate the ride-through option espoused by many courts.

Further, § 521(a)(2)(C) changed significantly with BAPCPA. Congress added the language that nothing in § 521(a)(2)(A) should limit debtor's rights "except as provided in section 362(h)." Section 362(h)(1)(A) dictates that when a debtor does not file a timely statement of intention, as required under § 521(a)(2), their property is subject to creditor repossession. Some courts construe this to mean that if one of the three express property dispositions (surrender, redeem, or reaffirm) is not chosen, then the debtor's property is subject to repossession and the ride-through is disallowed. It is important to note that this construction would only eliminate the outright ride-through, and *not necessarily* the so-called (but pejorative) "back-door" ride-through involved here.

MCFU does correctly argue that post-BAPCPA *ipso facto* clauses, which were previously held invalid, are now categorically enforceable. However, *ipso facto* clauses only become enforceable when the debtor violates either § 521(a)(6) or § 362(h), thus, this provision does not affect the ability to implement the ride-through at issue here. *See In re Chim*, 381 B.R. 191, 198 (Bankr. D. Md. 2008) ("[A] debtor who has timely entered into a reaffirmation agreement which the Court declines to approve, has nevertheless performed his or her duty under section 521(a)(6). . . . [Section 521(d)] does not make the applicability of the *ipso facto* clause dependent on Court approval of the agreement.").

The language of 11 U.S.C. § 524(k), which was added under BAPCPA, itself implicitly recognizes the existence of the ride-through. The disclosure requirement under § 524(k)(3) states that, even if a debtor "does not reaffirm and [her] personal liability on the debt is discharged, because of the lien [her] creditor may still have the right to take the security property if [she] does not pay the debt or default on it." What does that language refer to if not a ride-through, where a debtor is current on a pre-bankruptcy

obligation plan and is able to retain the property post-bankruptcy? *See* Christopher M. Hogan, Note, *Will The Ride-Through Ride Again?*, 108 COLUM. L. REV. 882, 902 (2008). *But see In re Donald*, 343 B.R. at 539 ("The implication is that even if the debtor discharges the debt, the property may be retained by the debtor so long as the debtor continues to make the agreed-upon payments. Presumably, the disclosures are intended to advise debtors of the correct state of the law, but here the disclosure appears to be incorrect, or at the very least, misleading.").

### III. CONCLUSION

For the indicated reasons, the Motion for Reconsideration is denied because MCFU has not shown that the Order is violative of the Bankruptcy Code. An order is being entered contemporaneously.

.

**Signed on December 14, 2011**
                                            **/s/ Walter Shapero**
                                **Walter Shapero**
                                **United States Bankruptcy Judge**

10

10-67727-wsd    Doc 39    Filed 12/14/11    Entered 12/15/11 07:10:41    Page 10 of 10